SALLIE M. THOMAS, Plaintiff in Error, *vs.* M. S. THOMAS, Defendant in Error.

*Opinion filed April 19, 1911—Rehearing denied June 19, 1911.*

1. PLEADING—*when matters set up by a cross-bill are germane to original bill.* A cross-bill in a divorce suit alleging that the complainant had left the defendant's home and set up a separate establishment, and averring that certain children had been born of the marriage and praying for their care and custody, is germane to the original bill in the sense that the two relate to the same matter, even though the original bill made no reference to children.

2. SAME—*filing original bill for divorce gives court jurisdiction of minor children of the parties.* By virtue of the statute the filing of an original bill for divorce brings the minor children of the parties within the jurisdiction of the court, and upon application of the parties the court may make any proper order respecting their custody pending suit, and if a divorce is decreed may make such order respecting their care and custody as is reasonable and just according to the circumstances of the case.

3. SAME—*matters arising after a suit is at issue must be presented by cross-bill.* A defense based upon facts arising after a chancery cause is at issue cannot be availed of by the defendant by plea or answer, but the defendant must make it the subject of a cross-bill, for the same reason that a complainant must bring in by supplemental bill matters occurring after filing original bill.

4. SAME—*cross-bill seeking no relief not obtainable by answer should·be dismissed.* If a cross-bill is filed which seeks no discovery and no affirmative relief which the defendant cannot obtain by answer to the original bill, the cross-bill may be dismissed on answer, motion or demurrer.

5. SAME—*the statute precluding dismissal of bill applies only where cross-bill seeks affirmative relief.* The statute which precludes a complainant's dismissal of the original bill after the defendant has filed a cross-bill applies only where the cross-bill asks for affirmative relief, as complainant cannot be compelled to prosecute a suit merely to enable the defendant to present a defense.

6. SAME—*cross-bill seeking affirmative relief requires equity to support it.* A cross-bill which is filed merely as a mode of defense to bring into the case matters occurring after the cause is at issue requires no equity to support it, but a cross-bill seeking affirmative relief is in the nature of an original bill, and the relief sought must be such as the court, in point of jurisdiction, is competent to administer.

7. SAME—*matters contained in cross-bill must be such as would authorize an original bill.* A cross-bill seeking affirmative relief must be germane to the subject matter of the original bill, but it is, in fact, a separate and distinct suit, and the matters contained therein must be such as might have been the subject of an original bill, otherwise the filing of the cross-bill does not deprive the complainant of the right to dismiss the original bill.

8. DIVORCE—*when cross-bill in divorce suit is unnecessary.* A cross-bill in a divorce suit which merely sets up facts tending to show that the defendant had not deserted the complainant, as alleged, but that she had deserted him, and alleging the existence of certain children of the parties and praying for their care and custody but not praying for a divorce, relates to matters equally available by answer and is unnecessary, and the complainant has the right to dismiss the original bill notwithstanding the cross-bill.

9. SAME—*Divorce act does not authorize bill solely for care and custody of children.* The Divorce act does not authorize the maintaining of an original bill by a husband or wife against the other for the sole purpose of obtaining the care and custody of their children, as the court, under that act, can only make orders concerning the care and custody of children during the pendency of a divorce suit, or upon final hearing when a divorce is decreed.

10. SAME—*bill filed solely to obtain custody of children cannot be maintained under general chancery powers.* The jurisdiction of a court of chancery over minor children as wards of the court depends upon the acquiring of jurisdiction of the person of the particular child and the subject matter by the commencement of some recognized proceeding in the court, and does not authorize the maintaining of a bill by a husband or wife against the other solely to obtain the care and custody of their children.

11. SAME—*court cannot decree care and custody of children unless a divorce is granted.* Neither a want of harmony between a husband and wife relating to the management of their children nor the right of either to their custody, control, support or education involves any equitable title or question of an equitable nature such as authorizes a court of equity to decree the care and custody of children, as between their parents, except as provided by the Divorce act in case a divorce is granted. (*Cowles* v. *Cowles,* 3 Gilm. 435, distinguished.)

12. MINORS—*jurisdiction of a court of equity to appoint guardians is not based upon equitable rights.* Courts of equity have power to appoint guardians for infants, but that power exists in Illinois by inheritance from the English court of chancery and not because equitable rights or titles are involved.

CARTER, J., dissenting.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

FOLLANSBEE, McCONNELL & FOLLANSBEE, and CLYDE E. SHOREY, for plaintiff in error.

C. H. POPPENHUSEN, and JOSEPH L. McNAB, (S. S. GREGORY, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 17, 1908, plaintiff in error, Sallie M. Thomas, filed her bill for divorce in the superior court of Cook county against defendant in error, Morris St. P. Thomas, on the ground of desertion. An answer was filed on August 21, 1908, denying the charge of desertion, but no mention was made in the bill or answer of the existence of any children of the marriage. On October 29, 1908, the defendant filed his cross-bill, reciting evidence tending to show that he had not deserted his wife but that she had deserted him, which was followed by a statement that she had deserted him and averments that two boys were born of the marriage, Benjamin M. Thomas, then thirteen years old, and Carr M. Thomas, ten years old, and that Benjamin was living with Mr. Thomas and the younger boy, Carr, was with his mother. The cross-bill did not seek a divorce but prayed for the care, custody, education and control of the two children and that Mrs. Thomas be enjoined from interfering therewith, and for such other and further relief as equity might require. Mrs. Thomas answered the allegation of the cross-bill that she had deserted her husband by denying it and demurred to the remainder, which set forth the birth of the children and matters relating to them and their custody. The court overruled the demurrer, and

Mrs. Thomas electing to stand by it, the cross-bill was ordered to be taken as confessed. When the cause was reached for hearing on the original bill and answer thereto and the cross-bill taken as confessed, Mrs. Thomas moved the court to dismiss her bill without prejudice for want of prosecution, but Mr. Thomas objected and the motion was denied. Mrs. Thomas offered no evidence in support of her bill and the cause was heard upon the cross-bill taken as confessed, but her solicitor appeared and contested the right to a decree on the cross-bill. The solicitor for Mr. Thomas informed the court that a divorce was not wanted, and the relief sought by the cross-bill was the custody of the children. The court entered an order finding that Mr. Thomas was a fit person to have the custody, control and education of the children and giving him the same and enjoining Mrs. Thomas from interfering therewith, and ordering her to bring or send the boy Carr into the State and deliver him to her husband within thirty days. She did not comply with that order, and a final decree was entered dismissing her original bill for divorce, granting, the prayer of the cross-bill and adjudging the costs of the suit against Mrs. Thomas. She prayed an appeal to the Appellate Court for the First District, which was allowed and perfected. The Appellate Court affirmed the decree and we granted a writ of *certiorari,* in pursuance of which the record is now under review.

The original bill prayed for a divorce on the ground of desertion. The cross-bill stated in detail that Mrs. Thomas had gone on a visit to Wisconsin and had not returned to the family home but set up a separate establishment a few blocks distant and had afterward gone to Sioux Falls, South Dakota, all of which was intended to show that the separation was her act, but the cross-bill did not ask for a divorce. Its prayer and its purpose were merely to obtain the care, custody, control and education of the two boys,

and so much of the cross-bill as alleged facts concerning them and asked for their custody was demurred to on the ground that such matters were not germane to the original bill. Because the original bill stated nothing about the existence of any children of the marriage, it was insisted, by demurrer, that matters concerning their custody could not be made the subject of a cross-bill. The facts set up in the cross-bill were germane to the subject of the original bill in the sense that they related to the same matter. The custody of the children was necessarily comprehended within the scope of the original bill although nothing was said about them. The filing of the original bill for divorce brought within the jurisdiction of the court the minor children of the parties by virtue of the statute, which authorizes the court, on application, to make such order concerning the custody and care of children during the pendency of the suit as may be deemed expedient and for the benefit of the children, and if a divorce shall be decreed the court may make such order touching the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just. The cross-bill was not bad on account of the reason alleged in the demurrer, and when the demurrer was overruled Mrs. Thomas was still prosecuting her suit for divorce. The court did not err in overruling the demurrer, but the situation was afterward changed by the motion of Mrs. Thomas to dismiss her bill and her refusal to prosecute it further, and if the court could not grant the relief sought by the cross-bill regardless of the prosecution of the original bill, the decree must be reversed.

The statute provides that after a cross-bill has been filed the complainant shall not be permitted to dismiss his bill without the consent of the defendant, and when Mrs. Thomas attempted to dismiss her bill the court denied her

motion.   A cross-bill may be filed purely as a matter of
defense based upon facts arising after the cause is at issue.
In such a case a defendant cannot avail himself of the
defense by plea or answer, but must make it the subject
of a cross-bill for the same reason that a complainant can
only bring into the suit matters occurring after the filing
of his bill by a supplemental bill.* (*Jenkins* v. *International
Bank,* 111 Ill. 462.)   The cross-bill in this case was not
filed purely as a matter of defense to the bill for divorce
based upon facts arising after the filing of the original bill,
and if it had been it would not have justified the court in
refusing to allow Mrs. Thomas to dismiss her bill.   The
statute only applies to a cross-bill asking for affirmative re-
lief, since it would be absurd to say that one who is merely
defending can insist that the complainant shall remain in
court in order that he may make a defense.   The court
could not compel Mrs. Thomas to prosecute her action for
divorce against her will merely in order that Mr. Thomas
should have an opportunity to prevent her obtaining it.   The
cross-bill was for the purpose of obtaining the custody of
the children, and a defendant will not be permitted to file
a cross-bill for an object which is equally available by an
answer.   (*Prichard* v. *Littlejohn,* 128 Ill. 123.)   Any ques-
tion relating to the custody of the children could have been
raised by Mr. Thomas by his answer, and at any time after
the original bill was filed such questions could have been
brought before the court by an application for such cus-
tody, and upon granting a divorce the court could have
awarded the custody to either party.   Mr. Thomas could
have fully set forth in his answer everything that was
required for the protection of his rights as father of the
children, and so far as the powers of the court under the
divorce statute are concerned, the cross-bill was useless.   If
a defendant should file a cross-bill when he seeks no dis-
covery and no affirmative relief that he cannot obtain by

answer to the original bill, his cross-bill will be dismissed either on answer or motion or demurrer. (*Edgerton* v. *Young,* 43 Ill. 464; *Morgan* v. *Smith,* 11 id. 194; *Wing* v. *Goodman,* 75 id. 159; *Akin* v. *Cassiday,* 105 id. 22; *Newberry* v. *Blatchford,* 106 id. 584; *Howe* v. *South Park Comrs.* 119 id. 101.) If the court had no other jurisdiction to award the custody of the children in controversy between the parents than that conferred by the divorce statute, the cross-bill interposed no obstacle to the dismissal of the original bill because Mrs. Thomas declined to prosecute her action for divorce and the cross-bill did not ask for a divorce and none was granted.

In England matrimonial causes were never under the jurisdiction of courts of equity, and in this country the jurisdiction is conferred by statute, which prescribes and limits the powers of the court. So far as the children are concerned, a court can, by virtue of the statute, only make orders concerning their custody during the pendency of the suit, or upon a final hearing where the divorce is decreed. Some courts have held that the custody of children can be granted to one of the parties to a divorce suit where a divorce is denied, or not granted, which is the same thing, but the decisions rest either on a statute conferring such power or upon supposed general equity powers of the court. In Alabama there is a statute giving courts of chancery power, in all cases of separation between husband and wife where neither party shall obtain a divorce, to give the custody and education of the children either to the father or mother, as may seem right and proper, and it was held that such an order could be made where there was an ineffectual attempt to procure a divorce. (*Cornelius* v. *Cornelius,* 31 Ala. 479.) We have no such statute but our divorce statute is to the contrary, and in this case there was not even an attempt to procure a divorce. In Nelson on Divorce and Separation (vol. 2, 979,) the author says that it is

not denied that a court has jurisdiction to fix the custody where a divorce is denied in a subsequent proceeding by *habeas corpus,* and that it seems to him useless to deny the relief in a divorce suit and grant it in another suit for the same purpose in States where the different forms of action are abolished. That opinion, of course, has no application to the courts of this State, where the law-making power has not thought it wise to abolish all distinctions between *habeas corpus* and bills for divorce nor to authorize courts of equity to administer purely legal remedies. In *Power* v. *Power,* 65 N. J. Eq. 93, it was held that when a wife has been denied a divorce the court may award the custody of the children if the bill contains a prayer for 'such relief, but it is quite clear that the court cannot grant such relief under a statute which limits the power of the court to cases where a divorce is granted. The courts generally hold that where a divorce is denied or not granted the court cannot consider or pass upon the question of the custody of the children. (*Simon* v. *Simon,* 6 N. Y. (App. Div.) 469, affirmed on the opinion below, 159 N. Y. 549; *Keppel* v. *Keppel,* 92 Ga. 506; *Garrett* v. *Garrett,* 114 Iowa, 439.) Mr. Thomas could not have maintained his cross-bill by virtue of any provision of the Divorce act, and if he could not have maintained it under the general equity powers of the court, it was error to refuse leave to dismiss the original bill because the cross-bill had been filed, and the final decree was also erroneous.

A cross-bill which is filed merely as a mode of defense to bring into the case matters occurring after the cause is at issue requires no equity to support it, but a cross-bill which asks affirmative relief is in the nature of an original bill asking further aid of the court beyond the mere defense, and the relief sought must be such as the court, in point of jurisdiction, is competent to administer. (*Tobey* v. *Foreman,* 79 Ill. 489; *Morrison* v. *Morrison,* 140 id.

560.) While such a bill must be germane to the subject matter of the original bill, it is, in fact, a separate and distinct suit commenced by the filing of the cross-bill. (*Ballance* v. *Underhill,* 3 Scam. 453.) It is an auxiliary suit concerning the same matters involved in the original bill, which is permitted in order that complete justice may be done between the parties in one proceeding. After a court of equity has obtained jurisdiction upon any equitable ground, it will retain such jurisdiction for the purpose of avoiding more than one suit and doing justice between the parties, although in doing so it may be necessary to establish purely legal rights or to grant legal remedies; (*Longshore* v. *Longshore,* 200 Ill. 470;) but in order to authorize relief which can be obtained in a suit at law there must be some substantial ground of equitable jurisdiction, and if there is no equitable ground of jurisdiction and the remedy sought can be as well obtained in an action at law, the court cannot retain jurisdiction and grant a purely legal remedy. *Brauer* v. *Laughlin,* 235 Ill. 265.

Mrs. Thomas refused to prosecute her suit for divorce, which she had a right to control, and asked the court to dismiss her bill, which the court could only refuse to do because the cross-bill had been filed. As already shown, the court could not refuse to dismiss the original bill, under the provisions of the divorce statute, because a cross-bill had been filed which was unnecessary and asked for relief which could not be granted unless the original bill was prosecuted to a decree for divorce. The court proceeded to hear the cause upon the cross-bill, which asked for affirmative relief, by granting to the complainant therein the custody of the children; and if a husband cannot maintain a suit in equity against his wife for such a purpose the court was without jurisdiction and the decree was erroneous.

No case where such a bill has ever been filed in England or this country has been discovered by the careful

research of the able counsel who have argued this case, and while the fact that it has never been done is not conclusive that it cannot be, it is satisfactory evidence that no solicitor has thought that it could be done. The argument in favor of such jurisdiction is upon the ground that courts of equity have a broad and comprehensive jurisdiction over the persons and property of infants. The existence of such jurisdiction has been frequently asserted in the strongest language, but such declarations are not different from like statements made with reference to jurisdiction over trustees and others occupying fiduciary relations. The jurisdiction can only be exercised when it has been acquired as to the particular person and subject matter in accordance with the practice in courts of equity, which is by the commencement of some sort of recognized proceeding in the court. What has been so often said respecting the jurisdiction does not mean that courts of equity take upon themselves the care, custody, education and maintenance of all the children within the territorial limits where they exercise their powers, but when a suit is instituted in a court of equity relative to the person or property of an infant he is treated as a ward of the court, and the court will not allow his rights to be prejudiced by any act, either of his own or of any other person. The court will protect the infant through a guardian *ad litem* or otherwise, as may be necessary, and will look to his interests and see that the guardian discharges his duty. (*Lynch* v. *Rotan*, 39 Ill. 14; *Hartmann* v. *Hartmann*, 59 id. 103; *Allman* v. *Taylor*, 101 id. 185; *Ames* v. *Ames*, 148 id. 321.) Where some proceeding is instituted in which an infant is a party, either as plaintiff or defendant, the controversy and decision of the court relate to his rights and property, and the court will see that he is represented by guardian, next friend, or in some proper manner, who is entitled to assign error on an improper decision of the court, and in such a proceeding

the infant becomes a ward of the court. In *Greenman* v. *Harvey,* 53 Ill. 386, it was said that an infant who was a party defendant did not become the ward of the court until service of process upon her. The jurisdiction so exercised respecting the rights or property of infants is a part of the general equity juisdiction, but this case is not within those limits. The cross-bill was filed by a husband against his wife to enforce an alleged right of the husband to the custody of the children. The attempt was to have the court consider and determine the relative rights of the parents to such custody, which is not an equitable but a legal right. It is true that where the court has jurisdiction the legal right will not be enforced to the detriment of the child, and the guiding motive of the court will be to conserve and protect the best interests of the child. But the right in question is that of a parent. Neither a want of harmony between a husband and wife relating to the management of their children, nor the right of either to their custody, control, support or education, involves any equitable title or question of an equitable nature. The principles upon which equitable powers are exercised do not sustain the claim that a husband and wife may litigate with each other in a court of equity over the question which one shall have the custody of their children.

There is another power which courts of equity have concerning infants and their property, and that is the appointment of guardians. (*Hohenadel* v. *Steele,* 237 Ill 229.) The source of this jurisdiction is quite uncertain. Whether the power was originally a mere usurpation, or was legally delegated to the chancellor by the crown as *parens patriæ,* or grew out of the practice of appointing guardians *ad litem,* the jurisdiction exists here by inheritance from the English courts of chancery and not because equitable rights or titles are involved. Like the power of any other court to appoint a guardian, that jurisdiction may be exercised upon a proper petition or application for the

appointment of a guardian. But the cross-bill in this case cannot be regarded as such a petition or application. In *Cowles* v. *Cowles*, 3 Gilm. 435, where the parties had been divorced, the court said that the legislature, in providing that when a divorce is decreed the court may award the custody of the children, conferred no new power on the court, which was correct in the sense that the power is of the same nature as a pre-existing power; but the court did not intimate that the power had ever been or could be exercised in a litigation between a husband and wife relating only to the custody of the children.

We conclude that the court had no jurisdiction to award the custody of the children to Mr. Thomas, and that the Appellate Court erred in affirming the decree of the superior court.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court, with directions to dismiss the original bill and cross-bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the reasoning or conclusion of the foregoing opinion. Our statute provides that the court in which divorce proceedings are instituted may make orders, pending such proceedings, as to the custody of the children, and if a decree of divorce is granted, make such further orders as to their care and custody, from time to time, as their interests may require. In *Cowles* v. *Cowles*, 3 Gilm. 435, this court long ago said (p. 438) : "It becomes clear, then, that our legislature, by providing that 'when a divorce shall be decreed it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just,' has

conferred no new authority or jurisdiction upon the court. It was by its original jurisdiction clothed with the same powers before. The cases provided for in this statute are necessarily embraced in that broad and comprehensive jurisdiction with which the court of chancery is vested, over the persons and estates of infants and their parents who are bound for their maintenance." It is the well settled law in this jurisdiction that a court of chancery is vested with "broad and comprehensive jurisdiction" over the persons and estates of all minors within the limits of its jurisdiction. *Hartmann* v. *Hartmann,* 59 Ill. 103; *Wilkinson* v. *Deming,* 80 id. 342; *Dodge* v. *Cole,* 97 id. 338; *In re Ferrier,* 103 id. 367; *Ames* v. *Ames,* 148 id. 321; *Van-Matre* v. *Sankey,* 148 id. 536; 3 Pomeroy's Eq. sec. 1303.

It is insisted that the cross-bill is not germane to the matters raised by the original bill. The custody of the minor children was necessarily comprehended within the scope of the original bill, although they were not mentioned therein. (*Snover* v. *Snover,* 10 N. J. Eq. 261.) Under our statute it would seem that upon the filing of the bill herein the minor children of the marriage became, in a sense, wards of the court, and hence any suggestions as to their custody, in a cross-bill, would be germane and relevant. If it becomes necessary to grant affirmative relief in order to dispose of the matters in controversy and do complete justice between the parties, a cross-bill may be filed, in which such relief may be granted and circuity of action avoided. (*Longshore* v. *Longshore,* 200 Ill. 470.) It is a familar rule that when a court of equity acquires juisdiction for one purpose it will retain it for all purposes, in order to do full and complete justice between all the parties. (*Wehrheim* v. *Smith,* 226 Ill. 346; *King* v. *King,* 215 id. 100.) Equity abhors a multiplicity of suits. (*Morrison* v. *Morrison,* 140 Ill. 560.) Suits for divorce based upon purely statutory grounds are of an equitable nature, and subject to the rules and maxims of courts of equity

rather than those of the English ecclesiastical courts. The fact that the legislature gave the power, in such cases, to the chancery courts of this State rather than to courts of law supports this view. "The equitable nature of the suit being established and it being brought in a court of equity, ·it should be dealt with upon the same equitable principles as other suits founded upon ordinary equities." (*Rooney* v. *Rooney,* 54 N. J. Eq. 231.) It is not necessary for children to be brought personally into court in order to give jurisdiction over them in these proceedings. (*Power* v. *Power,* 65 N. J. Eq. 93.) The court in the case last cited held that the writ of *habeas corpus* was entirely out of place when divorce proceedings are started in order to decide as to the custody of minor children and that the cross-petition upon that question was germane in divorce proceedings, the chancellor saying (p. 101) : "I think, under the practice of New Jersey adopted in these cases, that it was perfectly germane to the petition of the wife for the husband to set up this kind of a petition, so as to get affirmative relief against her negative relief. Without that he would only· have got negative relief, but with that cross-petition he is entitled to affirmative relief. It is germane to the suit,—just as germane as a cross-petition for divorce would be."

The precise question here raised has never been passed on by this court. It 'is plain from the majority opinion that there are authorities that uphold its conclusion. Under the varying statutes and systems of procedure the courts have not all agreed on this question. But where, as in this State, the court having jurisdiction of divorces has also general chancery jurisdiction, in my judgment it would be not only for the best interests of the minor children, but in accord with sound public policy, for the court to retain jurisdiction in this proceeding for the purpose of making any orders as to the welfare of the children that justice may require. Unless prohibited by statute or well settled

principles of law, a court of equity has always the power to do that which justice in a case requires. The chancellor in the superior court does not cease to be such because he sits to hear divorce cases. The statute regulating these proceedings does not purport to define fully the authority of the court. It commits thereto, subject to certain specific limitations, jurisdiction in all matters incidental to divorce. This statute is highly remedial and ought not to be strictly construed against the interests of the minors. A learned author has stated that while it may be necessary, in order to give a court of equity jurisdiction over infants, to have them made wards of the court, a suit was not necessary to that end; that any proceeding in or application to a court of chancery relating directly to the infant was sufficient. (3 Pomeroy's Eq. sec. 1305, note 1.) While the divorce proceedings were pending in the superior court, no other court, by *habeas corpus* or otherwise, could interfere with its custody of the children. (*In re Morgan,* 117 Mo. 249.) Certainly the chancery court had jurisdiction in respect to the subject matter of its decree. The only doubtful question is whether it obtained such jurisdiction regularly. There being no settled practice in this State to the contrary, it appears to me most unwise to turn the parties out of court and invite them to come again into the same court for the same relief now sought. The parties being before a court of equity, what more proper time can there be to adjudicate the rights of the parents to the custody of the children? (2 Nelson on Divorce and Separation, p. 979.) The court having acquired jurisdiction of the subject matter and the parties to the suit at the instance and by the prayer of plaintiff in error, I cannot reach any other conclusion than that, on the plainest principles of equity, she should be precluded from questioning the jurisdiction of the court which she herself has invoked.